IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF OAKLAND,<br><br>         Plaintiff,<br><br>     v.<br><br>COMCAST CORPORATION; COMCAST OF CALIFORNIA/COLORADO, LLC; and DOES 1 through 20, inclusive,<br><br>         Defendants.<br>_____/ | No. C 06-5380 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

   Defendants Comcast Corporation (Comcast Corp.) and Comcast of California/Colorado, LLC (Comcast LLC) move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the fifth, sixth, seventh, eighth, and ninth causes of action in Plaintiff the City of Oakland's first-amended complaint (FAC) as to Comcast Corp. for

failure to state a claim upon which relief can be granted.[1]  The City opposes the motion.  The matter was heard on February 2, 2007.  Having considered all of the papers filed by the parties and oral argument, the Court GRANTS Defendants' motion in part and DENIES it in part.

## BACKGROUND

The City's FAC and the attached exhibits allege the following.  The City grants franchises to cable television operators authorizing the construction, operation, and repair of cable systems in public rights-of-way for the provision of cable services within the City's jurisdictional boundaries, under the Federal Cable Act, 47 U.S.C. §§ 521, et. seq., and California Government Code § 53966.  FAC at ¶ 9.  In 1983, the City adopted Ordinance No. 10399 (Franchise Agreement), which stated the terms and conditions of a cable franchise granted to Lenfest West, Inc., including a requirement that the City approve any assignment or transfer of the franchise or control of the franchisee.  FAC at ¶ 10.  In February, 1996, the franchise was transferred to Heritage Cablevision of Delaware, Inc. (Heritage), which was owned and controlled by Tele-Communications Inc. (TCI).  Id.

The Franchise Agreement was set to expire at the end of December, 1998, but TCI initiated formal franchise renewal proceedings prior to the expiration date.  FAC at ¶ 11.  On June

---

[1] In their motion, Defendants argued that the City's claim for punitive damages as to the eighth and ninth causes of action should be stricken, but in their reply, Defendants concede that the City's prayer for punitive damages was sufficiently plead and they withdraw their motion as to the punitive damages claim.

2

23, 1998, TCI merged with AT&T Corporation (AT&T), and in September, 1998, AT&T and TCI filed an application requesting that the City approve the transfer of control of the franchisee, Heritage, from TCI to AT&T. FAC at ¶ 12. On February 16, 1999, the City agreed to approve the transfer if AT&T would "resolve certain on-going issues" of TCI's non-compliance with the terms and conditions of the Franchise Agreement, a deal which was memorialized in a settlement agreement between the City, TCI, and AT&T (1999 Agreement). FAC at ¶ 13. After signing the 1999 Agreement, the City approved the transfer, and AT&T converted the franchisee, Heritage, to a limited liability company and renamed it AT&T Broadband of Delaware, LLC (AT&T Broadband). Id.

In preparation for franchise renewal negotiations with AT&T Broadband, the City reviewed Heritage's past performance under the Franchise Agreement and discovered ongoing material violations of the Franchise Agreement and the 1999 Agreement. FAC at ¶¶ 14, 15. As a result, the City instituted administrative proceedings against AT&T Broadband, as Heritage's successor, seeking liquidated damages under the terms of the 1999 Agreement. FAC at ¶ 15. On December 19, 2001, AT&T and Comcast Corp. entered into a merger agreement under which all cable systems controlled by AT&T would come under the control of Comcast Corp. FAC at ¶ 16. In February, 2002, AT&T and Comcast Corp. filed an application with the City requesting approval of the transfer of control over franchisee AT&T Broadband from AT&T to Comcast Corp. Id. Franchise renewal negotiations between the City and AT&T Broadband had been bogged down over key terms, including the length of renewal, the amount of funding for

3

1 public, educational, and government access channel production
2 facilities, and a fiber-optic network connecting schools.  FAC at
3 ¶ 17.  The City notified AT&T and Comcast Corp. that it would not
4 approve the application to transfer control of AT&T Broadband until
5 all of the compliance and franchise renewal issues were resolved.
6 FAC at ¶ 18.
7     The City, AT&T, and Comcast Corp. eventually reached an
8 agreement on a complex global settlement.  FAC at ¶ 18-19.  The
9 agreement provided that the City would approve transfer of control
10 over AT&T Broadband to Comcast Corp., and waive its non-compliance
11 claims against AT&T Broadband, in exchange for AT&T Broadband's
12 agreement to provide cash and non-cash consideration, and to
13 consent to key terms of the franchise renewal.  FAC at ¶ 19.
14 During the negotiations, Comcast Corp. was aware of the City's
15 concerns over the transfer of control and the franchise renewal
16 terms.  FAC at ¶ 25.  Comcast Corp. facilitated the final
17 negotiations between the City and AT&T Broadband, and made "certain
18 assurances" and "affirmative representations" concerning AT&T
19 Broadband's future performance of its obligations once Comcast
20 Corp. took control.  FAC at ¶¶ 19, 25.  On July 16, 2002, this
21 global settlement was memorialized in three separate writings
22 (together referred to as the 2002 Agreements): a Change of Control
23 Agreement (CCA) between the City, AT&T Broadband, and Comcast
24 Corp.; a Settlement Agreement (2002 Settlement Agreement) between
25 the City and AT&T Broadband; and a Memorandum of Understanding
26 (MOU) between the City and AT&T Broadband.  FAC at ¶ 20.  Based on
27 these agreements, the City approved the change of control over AT&T
28

4

Broadband from AT&T to Comcast Corp. FAC at ¶¶ 21, 27. Subsequently, Comcast Corp. changed the name of AT&T Broadband to Comcast of California/Colorado, LLC (Comcast LLC). Id.

The MOU states that any future franchise renewal agreement will incorporate the substantive terms and principles set forth in the consolidated proposal described in a letter from AT&T Broadband to the Oakland City Manager dated June 12, 2002 (2002 Letter). FAC at ¶ 23-24. The MOU further states that the City and AT&T Broadband would use their "best efforts" to complete negotiations on a final franchise agreement by October 30, 2002. FAC at ¶ 26. Following the transfer of control, the City repeatedly requested that Comcast LLC resume negotiations to finalize the franchise renewal, but Comcast Corp. informed the City that, due to issues associated with the change of control, Comcast LLC would not be in a position to negotiate until December, 2002. FAC at ¶ 28. In December, 2002, negotiations began between the City and representatives from Comcast Corp. and Comcast LLC, and they continued until March 21, 2005, when the parties formalized a final agreement on the franchise renewal and regulatory issues, which incorporated the terms of the MOU. FAC at ¶ 29-30. The agreements were forwarded in the form of ordinances to the City Council for approval. FAC at ¶ 30.

On October 11 and November 8, 2005, the City Council held public hearings on the franchise renewal and regulatory ordinances, and at the October 11 meeting, Comcast LLC representatives publicly agreed to accept the ordinances if the City Council adopted them in the form and substance upon which Comcast LLC had agreed. FAC at

5

¶ 31. At the public hearings, speakers expressed concerns over Comcast Corp. and Comcast LLC's labor policies. FAC at ¶ 32. In reaction to this testimony, the City approached Comcast LLC about the possibility of a "side letter" agreement regarding Comcast LLC's compliance with labor laws, which would not affect the agreements already reached by the negotiating teams. Id. Comcast LLC declined the City's request to add the side letter agreement. Id. On December 6, 2005, the City and Comcast Corp. held a telephone conference in which Comcast Corp. stated that it would not allow Comcast LLC to accept the franchise renewal or cable regulatory ordinance, even in the form and substance that was originally agreed upon, unless the City would add language to the franchise ordinance that would "effectively cede[] the City's authority to adopt practices and policies affecting labor." FAC at ¶ 33. The City refused to accede to Comcast Corp.'s request. Id.

On December 20, 2005, the City Council preliminarily adopted the franchise renewal and regulatory ordinances, "unchanged in form or substance" from what "the City and Comcast LLC had agreed and Comcast Corp. had promised to support."[2] FAC at ¶ 36. In a letter to the City Attorney dated February 15, 2006, Comcast Corp. stated that Comcast LLC would not accept the franchise renewal ordinance due to "the significant changes that had occurred" since the negotiation of the draft agreement, but offered the City the option of returning to negotiations. FAC at ¶ 37, Ex. 3. On February 21,

---

[2] Based on its subsequent actions, it appears the City adopted these two ordinances along with the labor ordinance to which Defendants objected.

6

2006, the City Council finalized its adoption of the cable franchise renewal and regulatory ordinances, including the labor ordinance, which commenced a thirty day window for Comcast LLC to execute its acceptance. FAC at ¶ 39. In a second letter to the City Attorney, dated March 1, 2006 (together with the February 15 letter, referred to as the Repudiation Letters[3]), Comcast Corp. reiterated its refusal to cause Comcast LLC to accept the ordinances. FAC at ¶ 40. On July 6, 2006, Comcast Corp. repeated the position stated in the Repudiation Letters and represented that Comcast LLC would not honor its obligations under the MOU in any future agreements, but invited the City to return to the negotiating table. FAC at ¶ 41.

As a result of these events, the City brought suit alleging various state law contract and tort claims against Defendants in state court. Defendants removed to district court on the grounds of diversity jurisdiction.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff.

---

[3] The City alleges in the FAC that these letters were sent by Comcast Corp., a claim which is not obviously contradicted by the letters themselves, and thus the Court must treat the City's allegation as true.

7

NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

                              DISCUSSION

I.   Fifth Cause of Action: Unjust Enrichment

In the FAC's fifth cause of action, which is against both Comcast Corp. and Comcast LLC, the City alleges that it approved the transfer of control over AT&T Broadband to Comcast Corp. based upon "promises, commitments, and warranties" that Defendants made in the CCA and 2002 Settlement Agreement. The City argues that Comcast Corp. has been unjustly enriched by the City's performance

8

because Comcast Corp. gained control over the franchisee but has not caused Comcast LLC to honor its contractual obligations. Defendants argue that Comcast Corp. was not a party to the MOU or to the 2002 Agreement and thus Comcast Corp. could be liable for the promises made in those agreements only if it were an alter ego of Comcast LLC. In their reply, Defendants also assert that the integration clause in the CCA bars the unjust enrichment claim.

"There is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1490 (2006). "One of the 'underlying principles' of the Restatement [of Restitution (First) § 1] is that 'a person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" CTC Real Estate Services v. Lepe, 140 Cal. App. 4th 856, 860-861 (2006) (quoting 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 1015, 1016, pp. 1104-1105). The doctrine of unjust enrichment can "in some instances, have validity without privity of relationship." Id. at 861 (quoting Kossian v. American Nat. Ins. Co., 254 Cal. App. 2d 647, 650 (1967)). However, "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." Lance Camper Manufacturing Corp. v. Republic Indemnity Co., 44 Cal. App. 4th 194, 203 (1996).

The City's claim that Comcast Corp. has been unjustly enriched, by receiving control of the franchisee, fails because

9

unjust enrichment cannot be claimed where a written contract covers the same issue.  The CCA outlines the conditions of the City's approval of transfer of control over franchisee AT&T Broadband from AT&T to Comcast Corp.  In it, the City and Comcast Corp. specify Comcast Corp.'s responsibilities in order to receive control of the franchisee.  Any argument the City makes that Comcast Corp. has been unjustly enriched by the transfer of control is precluded by the existence of the CCA.  If Comcast Corp. breached a promise that it made in the CCA, it is liable for breach of contract, not unjust enrichment.  If Comcast Corp. breached some other alleged promise that induced the City to enter into the CCA, but that was not included in the CCA, it would be protected by the integration clause in the CCA.  "The parol evidence rule generally prohibits the introduction of any extrinsic evidence to vary or contradict the terms of an integrated written instrument."  Bionghi v. Metropolitan Water Dist. of So. California, 70 Cal. App. 4th 1358, 1364 (1999); Cal. Code Civ. Proc. § 1856.

    Although the City does not provide a copy of the CCA, as it does of other documents relied upon in the FAC, "[a] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute on other grounds)).  The CCA, the contract authorizing the transfer of control over the franchisee to Comcast Corp. and the only written document to which Comcast Corp. was a party, is integral to the City's claims and

10

repeatedly referred to throughout the FAC. Defendants have attached a copy of the CCA to the declaration of Jeffrey Smith and there has been no challenge to its authenticity. Therefore, the Court will consider the CCA in its entirety.

Paragraph 9.2 of the CCA contains the following integration clause:

> Entire Agreement: This agreement constitutes the entire agreement of the parties with respect to the settlement of the matters addressed herein. No statements, promises, or inducements inconsistent with this Agreement made by any party shall be valid or binding, unless in writing and executed by all parties. This agreement may only be modified by written amendments hereto signed by all parties.

Decl. of Jeffrey Smith Ex. A. Paragraphs 2.1 and 2.2 of the CCA make clear that Comcast LLC would be bound by and responsible for all prior and concurrent commitments, duties and obligations, including the 2002 Agreements. The CCA does not indicate that Comcast Corp. will also be responsible for these obligations, or that it will guarantee Comcast LLC's performance. This rather substantial condition would presumably have been included in the CCA if Comcast Corp. were willing to agree to it, and would be inconsistent with the allocation of responsibility in ¶¶ 2.1 and 2.2 of the CCA. Thus, the City cannot state a claim that Comcast Corp. was unjustly enriched by the transfer due to promises made in the CCA, during negotiations, or after it was signed, without pleading that Comcast Corp.'s representations were fraudulent. Therefore, Defendants' motion to dismiss as to the fifth cause of action against Comcast Corp. is GRANTED. The Court grants the City leave to amend if it can truthfully allege that Comcast Corp. made

11

1 fraudulent misrepresentations during negotiations of the 2002
2 Agreements and can specify what exactly those were.
3 II.  Sixth Cause of Action: Breach of Oral Contract
4     In the FAC's sixth cause of action for breach of oral
5 contract, brought solely against Comcast Corp., the City alleges
6 that at the meeting on March 21, 2005, Comcast Corp. orally agreed
7 to cause Comcast LLC to accept the franchise renewal agreement if
8 the franchise renewal and regulatory ordinances were adopted by the
9 City Council in the form and substance agreed upon, and that
10 Comcast Corp. later refused to do so.  In their reply, Defendants
11 argue that the integration clause in the CCA bars consideration of
12 the alleged oral agreement.
13    As discussed above, the integration clause in the CCA
14 precludes any contemporaneous or subsequent oral agreements that
15 would materially change a matter within its scope.  Any
16 representations and assurances made during the negotiations
17 relating to what Comcast Corp. would have to do to acquire control
18 of AT&T Broadband were intended to be included in the written CCA,
19 and any subsequent agreements changing the conditions of the
20 transfer, such as Comcast Corp. agreeing to cause Comcast LLC to
21 perform its obligations under the 2002 Agreements, were intended to
22 be made writing.  The alleged oral contract entered into three
23 years after the CCA was signed, which would burden Comcast Corp.
24 with the additional responsibility of causing Comcast LLC to honor
25 the promises it made in the 2002 Agreements and subsequent
26 negotiations, would significantly change the conditions of
27 transfer.  Because the oral agreement falls within the subject

12

matter of the CCA and would materially alter its terms, it is void and the City cannot state a claim that Comcast Corp. breached it. Therefore, the Court GRANTS Comcast's motion to dismiss the City's sixth cause of action against Comcast Corp. for breach of oral contract. The Court grants the City leave to amend, if it can truthfully do so, to plead facts indicating that Comcast Corp. entered into a separate oral contract with the City, not inconsistent with the terms of the CCA.

III. Seventh Cause of Action: Negligent Misrepresentation

In the FAC's seventh cause of action, brought solely against Comcast Corp., the City alleges that Comcast Corp. engaged in negligent misrepresentation by not fulfilling certain unspecified "representations and assurances" it made about Comcast LLC's future performance of its obligations under the MOU after control was transferred. In their motion, Defendants argue that the seventh cause of action does not state a claim because the alleged representations constitute opinions about the future, not statements of material fact.

California Civil Code § 1709 provides, "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers," and § 1710 defines deceit as an "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." Cal. Civ. Code §§ 1709, 1710; Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986). Thus, under California law:

Negligent misrepresentation is a form of deceit, the

13

> elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages.

Fox, 181 Cal. App. 3d at 962 (internal citations omitted).

In the instant case, the City alleges that Comcast Corp.'s "representations and assurances" that it would direct Comcast LLC to abide by the terms of the MOU, were material facts. The City relies on Eade v. Reich, 120 Cal. App. 32, 34 (1932), in which the court held that a prediction can constitute a "statement of fact" as opposed to a "promissory representation" when it involves "matters peculiarly within the speaker's knowledge." The City also cites cases from 1898 and 1926 in support of the same proposition. The key distinction those cases discuss between a fact within the promisor's sole purview, such as when a manufacturing plant will relocate or when corporate dividends will be announced, and a promise, is not present here.

As noted, the FAC does not specify exactly what misrepresentations Comcast Corp. made. If the representations were predictions that Comcast LLC would perform its obligations under the 2002 Agreements, then they would be opinions as opposed to facts, and thus not the basis for a colorable negligent misrepresentation claim. If, on the other hand, the representations were promises that Comcast Corp. would cause Comcast LLC to perform its obligations, then the City would have to allege that these promises were made by Comcast Corp. without a reasonable intent to perform. If Comcast Corp.'s representations

14

were something else, then they must be specified.  Therefore, Defendants' motion to dismiss the City's seventh cause of action for failure to state a negligent misrepresentation claim is GRANTED with leave to amend, for the City to plead, if it can truthfully do so, what material facts Comcast Corp. represented that it did not reasonably believe were true at the time.

IV.  Eighth and Ninth Causes of Action: Interference Claims

The City alleges in the FAC's eighth and ninth causes of action that Comcast Corp. intentionally interfered with the contractual relationship between Comcast LLC and the City by inducing Comcast LLC to breach its agreement under the MOU, and that it deprived the City of its prospective economic advantage. In their motion, Defendants argue that Comcast Corp. cannot be liable for interfering in the contractual relations of its wholly-owned subsidiary because of the financial interest privilege, unless it utilized improper means, and that the City has not plead an independently wrongful act constituting intentional interference with prospective economic advantage.

A.  Intentional Interference with Contract

Defendants argue that Comcast Corp. was privileged to interfere in Comcast LLC's contractual obligations because Comcast LLC is its wholly-owned subsidiary.  Defendants argue that this privilege, which is normally an affirmative defense, can be decided on the pleadings where the facts demonstrating the privilege appear on the face of the complaint.  However, none of the cases Defendants cite supports the proposition that such a privilege should be decided on the pleadings in the instant case.

15

Defendants rely primarily on the language in <u>Chicago Title Ins. Co. v. Great Western Fin. Corp.</u>, 69 Cal. 2d 305, 319 (1968), that "[o]ne with a financial interest in the business of another is privileged however, so long as he does not employ improper means but acts merely to protect his financial interest or promote the other's welfare, to induce the other not to enter a business relationship with a third party." This part of the opinion is discussing the distinct tort of interference with prospective business advantage which, as discussed below, has a separate independent wrongful act requirement that interference with contract does not have. The <u>Chicago Title</u> court dismissed the interference with contract claims because there was no "allegation alleged that appellants had a contract with anyone which was breached as a result of the activities of defendants or any of them." <u>Id.</u> Defendants cite <u>Alpha Distributing Co. of California, Inc. v. Jack Daniels Distillery</u>, 454 F.2d 442, 450 (9th Cir. 1972), for the proposition that the language from <u>Chicago Title</u> quoted above was extended to apply to interference with contract claims. This case was appealed from a bench trial and has no relevance to whether financial interest privilege can be decided on the pleadings.

Defendants also cite <u>Culcal Stylco, Inc. v. Vornando</u>, 26 Cal. App. 3d 879, 881 (1972). In that case, the court stated that, although the defendants met some factors applicable to the financial interest privilege by virtue of their parent-subsidiary relationship, "being the principal owners of a business, without more, did not make their intentional interference with a contract

16

of the business privileged as a matter of law – that is, privileged 'under all conceivable circumstances.'" Id. at 882-883. The court went to explain that:

> The privilege that arises by reason of section 769[4] is at most a qualified one dependent for its existence upon the circumstances of the case. It is essentially a state-of-mind privilege and therefore its existence cannot normally be satisfactorily determined on the basis of pleadings alone. The resolution of the issue turns on the defendants' predominant purpose in inducing the breach of the contract. This is preferably a matter to be determined on the basis of proof rather than of pleading.

Id. The other authorities cited by the parties reiterate this standard. Therefore, Defendants' argument that the facts supporting Comcast Corp.'s "financial interest privilege justification are apparent on the face of the FAC" because the City acknowledges that Comcast Corp. "is the direct parent company of Comcast LLC," is not supported by the law. Accordingly, the Court DENIES Defendants' motion to dismiss the eighth cause of action for intentional interference with contract.

B. Intentional Interference with Prospective Economic Advantage

Although a plaintiff may bring both interference causes of action if the pleadings support it, "the distinction between these two torts is found in the independent wrongfulness requirement of

---

[4] Section 769 of the Restatement of Torts reads: "In determining whether there is a privilege to [interfere with the economic relations (including contractual relations) of another] . . . the following are important factors: (a) the nature of the actor's conduct; (b) the nature of the expectancy with which his conduct interferes; (c) the relations between the parties; (d) the interest sought to be advanced by the actor; and (e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand."

17

the tort of interference with prospective economic advantage." <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1157-1158 (2003).

> [W]hile intentionally interfering with an existing contract is "a wrong in and of itself," intentionally interfering with a plaintiff's prospective economic advantage is not. To establish a claim for interference with prospective economic advantage, therefore, a plaintiff must plead that the defendant engaged in an independently wrongful act. An act is not independently wrongful merely because defendant acted with an improper motive.

<u>Id.</u> at 1158 (internal citation omitted).

The City fails to plead that Comcast Corp. engaged in an independently wrongful act to deprive the City of its prospective economic advantage. The only action that the City alleges is that Comcast Corp. directed Comcast LLC to reject the franchise renewal ordinance, which is also the act of interference itself. Although that act may be sufficiently wrongful to state a claim for interference of contract, the act of interference alone does not state a claim for interference with prospective economic advantage in the absence of a contract.

The City's only mention of the independent wrongful act requirement appears in footnote six of its opposition, where it asserts that it has met its burden "by showing that Comcast Corporation engaged in 'negligent misrepresentation.'" As stated above, the "negligent misrepresentation" that the City plead was that Comcast Corp. failed to fulfill its promise that it would cause Comcast LLC to abide by the terms of the MOU. That allegation is irrelevant to the act of subsequently encouraging the repudiation of those contracts, which is what is at issue here. Therefore,

18

Defendants' motion to dismiss for failure to state a claim is GRANTED with leave to amend as to the ninth cause of action against Comcast Corp. for intentional interference with prospective economic advantage.  If the City can truthfully do so, it may amend to plead any independently wrongful act that Comcast Corp. committed in order to interfere with the relationship between the City and Comcast LLC.

CONCLUSION

The Court GRANTS Defendants' motion to dismiss, for failure to state a claim against Comcast Corp, the fifth cause of action for unjust enrichment, the sixth cause of action for breach of oral contract, the seventh cause of action for negligent misrepresentation, and the ninth cause of action for intentional interference with prospective economic advantage, all with leave to amend if the City can truthfully do so.  The Court DENIES Defendants' motion to dismiss the eighth cause of action for intentional interference with contract.  The City has fourteen days from the date of this Order to file a second amended complaint.  Defendants' response is due twenty days thereafter.  If Defendants file a motion to dismiss the City's second amended complaint, it should be noticed for April 13, 2007, at 1:30 p.m.  A case management conference will be held at that date and time, even if no motion to dismiss is filed.

IT IS SO ORDERED.

Dated: 2/14/07

CLAUDIA WILKEN
United States District Judge